# Estate of Jacob Moses.   Appeal of Ella N. Hause et al.

*Will—Construction—Bequest to children as a class.*

Under a bequest to the children of testator's brothers and sisters, share and share alike to them severally, and their heirs and assigns forever, such of the children take as were living at the death of the testator, to the exclusion of the representatives of children dying before the testator, but after the date of his will.

The act of 1844 does not extend to such a case, for the legacies never vested in the children dying before the testator.

Argued Nov. 18, 1896.  Appeal, No. 108, Nov. T., 1896, by Clifton Pennypacker, Ella Hause and Maggie James, grand-nephew and grandnieces of Jacob Moses, the testator, they being children of Silas Pennypacker, deceased, who was a son of Mary Pennypacker, deceased, who was a sister of Jacob Moses, the testator, from the decree of O. C. Chester Co., affirming the auditor's report making distribution.  Before RICE, P. J., WILLARD, WICKHAM, BEAVER, REEDER, ORLADY and SMITH, JJ.  Affirmed.

Exceptions to auditor's report.

The facts sufficiently appear from the report of William Butler, Jr., auditor, which is as follows:

By the ninth item the testator gives to the children of his brother Samuel Moses one fourth of the residue of his estate. At the time the will was executed there were three children of Samuel Moses living, to wit: John G. Moses, Margaret A. Chalfant and Eusebia N. Warden, and four grandchildren, to wit: Lewis B. Vanderslice, Horace F. Vanderslice, Adelle G. Bader and Sallie A. McKeone; children of a fourth child, Mary S. Vanderslice, who died in the year 1888. These grandchildren claimed before the auditor that they were entitled to

take under the bequest to the children of Samuel Moses, what their mother, Mary S. Vanderslice, would have taken if she had been living. This proposition was opposed by counsel for the executors, and A. P. Reid, Esq., who represented Mary Phillips, a child of Mary Pennypacker, deceased, they contending that the bequest is distributable solely to the three children of Samuel Moses, who were those living at the date of the execution of the will. Mary S. Vanderslice had been dead for some time at the date of the will, and her four children, and her two sisters and a brother, above named, were living at the date of the will, and are all still in being.

The clause of the will is as follows : " I give and bequeath to my brother Samuel Moses's children, one equal fourth part to be divided between them, their heirs and assigns, share and share alike."

Counsel for these grandchildren did not rely in urging the claims of his clients upon the act of May 6, 1844, P. L. 565, relative to lapsing of legacies ; but as there are other claimants, under another clause of the will, who are similarly situated, whose counsel do, in part, depend on that act, the act has been brought earnestly to the attention of the auditor, and has been by him carefully and fully considered.

The language of the act is as follows : " No devise or legacy hereafter made in favor of a brother or sister, or the children of a deceased brother or sister of any testator—such testator not leaving any lineal descendants, shall be deemed or held to lapse or become void by reason of the decease of such devisee or legatee in the lifetime of the testator, if such devisee or legatee shall leave issue surviving the testator. Saving always to every testator the right to direct otherwise."

This act has been interpreted so as to save a void as well as a lapsed legacy. It has been held to be effective to carry a bequest to the representatives of one named as a legatee, though such legatee was dead at the time the will was executed : Minter's Appeal, 40 Pa. 111; Hook's Estate, 10 W. N. C. 140.

It would therefore appear that if Mary S. Vanderslice is designated as a legatee, the fact that she was dead when the will was executed will not avoid the application of the statute against lapsing, and if there is nothing else in the way, her children will take her legacy.

The difficulty on this branch of the contention, which occurs to the auditor's mind, is that Mary S. Vanderslice is not named as a legatee, and that there is consequently no bequest to her to be saved from lapsing by the act of 1844, and to be thus handed down to her children.  Mary S. Vanderslice is not designated by name; and at the time the will was executed she did not, as a fact, exist; she was dead; she was not a child of Mary Pennypacker.  At this time there were children of Mary Pennypacker living, and they aptly answered the description of testator's objects of bounty.

It follows, as above suggested, that no legacy is given to Mary S. Vanderslice, and that the act of 1844 has no application to the question under consideration.  It is expressly decided in Gross's Estate, 10 Pa. 360, that the act of 1844 does not apply in case of a bequest to children of a collateral relative; that in such case no estate vests until the death of the testator; that until then the estates of the children are contingent, and if any of them are dead before the testator, no estate vested in them.  Guenther's Appeal, 4 W. N. C. 41, and Bradley's Appeal, 166 Pa. 300, are to the same effect.

In Minter's Appeal, and Hook's Estate, above cited, the legacies saved by act of 1844 were unequivocally given to the parties whose death resulted in the application of the act.

In Minter's Appeal, the legacy saved by the statute was given to " My sister Barbara Saval."  In Hook's Estate, the bequest was to Cumberland C. Hook.

Since, then, no legacy was given to the mother of the claimants, and the act of 1844, above considered, can consequently be of no benefit to them, they cannot take unless they are directly named as legatees; unless the words " heirs and assigns " as found in the bequest, designates and describes them.

No citation of authority is necessary to sustain the proposition that, if the bequest had been to the " children," without more, the claimants could not take.  Where the term "children" is used, and there are children, grandchildren do not take unless there is language in the will making such purpose apparent: Hallowell v. Phipps, 2 Wh. 379; Dickinson v. Lee, 4 Watts, 82; Castner's Appeal, 88 Pa. 478; Hunt's Estate, 133 Pa. 260; Denlinger's Appeal, 170 Pa. 104.

The question presented is whether the addition of the words

"their heirs and assigns" shows the purpose of the testator to have been, not to give to the "children" as an exclusive class. Have these words such operation? Can they be construed as substitutionary, as expressing the purpose that if any of the children should be dead at the death of the testator, their children should take. If so, then the rule laid down in Gross's Estate, 10 Pa. 360, to the effect that in case of a bequest to a class, the bequest is limited to those individuals of the class who are in being at the death of the testator, will not prevent the claimants taking, for that rule yields where a contrary intent appears. In the judgment of the auditor, however, the words "heirs and assigns" as found in the language of the bequest are not used in a substitutionary sense, are not intended to designate takers in the place or stead of the children. They are used as words of limitation of the estate given to the "children;" are intended to indicate that an absolute estate is given to them.

If it be granted that if the word "heirs" stood alone, there might be some doubt as to its office, connected as it is with the word "assigns," there can scarcely be a legitimate doubt. The word "heirs" is itself a term of general import and comprehends collaterals as well as lineals, but the word "assigns" is still more comprehensive, includes those who are strangers to the blood, and could not be construed to mean the children of Samuel Moses' child. The testator would not describe his grandnephews and nieces as "assigns" of his nephews and nieces. The auditor is of the opinion that the language of the bequest, giving to the "children," one equal fourth part to be divided between them, "their heirs and assigns, share and share alike," is susceptible of no other construction than as giving an estate to a class, and the words "their heirs and assigns" are not used in a substitutionary sense, as designating other takers, but as words of limitation of the estate given to the children.

The case of Dickinson v. Lee, 4 Watts, 82, would seem to compel the conclusion stated. The facts of that case are so nearly identical in their material features with those before the auditor, that the conclusion there recorded must rule the question before him.

In Dickinson v. Lee, the bequest was to "all my children, their heirs or assigns, in equal shares, share and share alike," etc. Here the bequest is to the "children one equal fourth

part to be divided between them, their heirs and assigns, share and share alike." There, as here, there were "children." The court say: "Here the testator had children, and there is no room to declare the grandchildren entitled on that ground. Then as to the description in other respects. The residue is ordered to be divided among all the testator's 'children,' their heirs or assigns in equal shares, share and share alike." There is but one word in this (heirs) that can, by any construction, whatever, have the remotest relation to the children as constituting separate stocks; and that word, used as it is without words of restriction, is too general to be equivalent to issue, as it would equally let in collaterals. It is, however, coupled with a word (assigns), which if it is to have any effect at all, certainly cannot be a restrictive one. Even putting that difficulty aside, there is another, and a more formidable one, in the nature of the office these two words were evidently intended to perform. To speak analogically, they were used as terms, not of purchase, but of limitation; or at least of perpetuity, to indicate that the bequest was in full property.'

The words "their heirs and assigns" not being used in a substitutionary sense, to describe takers in place of "children," but as words of description of the estate given to the "children," the rule declared in Gross's Estate, 10 Pa. 360, applies. The bequest is to the children as a class, and as is said in that case: "Those only who are in being at the time of the testator's death can take."

Gross's estate not only enunciates principles which control the disposition of the questions before the auditor, but is so similar in its essential facts as directly to decide the questions. In that case the bequest was to "the children of the brothers and sisters of my first wife, . . . share and share alike, to them severally and their heirs and assigns forever." The court say: "Mr. Justice YEATES says: 'Where the devise or gift to the children is general, and not limited to a particular period, it is confined to the death of the testator.' This, then, being the general rule, is there anything to make this case an exception? It is contended there is, because the devise is to the children, share and share alike, to them severally, and their heirs and assigns forever. But it is difficult to distinguish this case from the rule, as stated by Chief Justice TILGHMAN, in Pemberton v.

Parke. There it is to be equally divided among the children; here it is to be divided among them share and share alike— words conveying exactly the same meaning. It is clear these words are not intended to designate the persons who are to take, to control the general expressions, or to determine the time when the legacies are to vest; but are designated to indicate the manner they are to hold, viz, share and share alike, and the quality of their respective interests in the legacies, viz, an absolute estate. There is, therefore, nothing in these words to exempt the case from the operation of the general rule."

Counsel urged that the case of Dickinson v. Lee, above cited, was not in point because of the subsequent passage of the act of 1844, relative to the lapsing of legacies, and of the act of 1855, P. L. 368, relative to representation in case of intestacy.

As to the act of 1844, the auditor has given his reasons for thinking that it has no application in this case. It is his judgment that no legacy was given to the mother of the claimants, and that, consequently, there is no legacy to be saved from lapsing. Aside from this, it is expressly decided in Gross's Estate, that the act of 1844 has no application where the bequest is to a class. Bradley's Appeal, 166 Pa. 300, cited by claimants, does decide that the act of 1833, relative to legacies given to lineals, is operative even where the bequest is to a class, but holds that in this respect it differs from the act of 1844, relative to collaterals, and recognizes the rule laid down in Gross's Estate, as the law, where the bequest is to collaterals. The auditor is unable to discover in what way the act of 1855 can benefit the claimants. If this was a case of intestacy, they as grandnephews and grandnieces of the decedent would take their mother's share of the estate by representation.

The act of 1855 extends representation this far. The act of 1855, however, can play no part when a testator has intelligibly manifested what disposition he desires made of his estate.

The case of Sorver v. Berndt, 10 Pa. 213, was relied upon by claimants. There the bequest was to the children or legal heirs of my brother D. One of the children died before the testator, leaving a child. The court was of opinion that unless the words "or legal heirs of my brother D." were construed as descriptive of beneficiaries other than children—as introducing other takers —they could have no meaning. The court consequently held

that by these words the testator expressed the purpose to have his brother's heirs take, whether children or grandchildren.

In the case before the auditor the bequest is not to the children or heirs of Mary Pennypacker, but to the children, their heirs and assigns. To say nothing of the presence of the word " assigns," in connection with " heirs "—showing that " heirs " is used in the sense of limiting the estate given to the children —there is a manifest difference between a bequest to the children or heirs of a brother, and a bequest to the children of a brother, their heirs. In the former case the testator expressly indicates that the bequest is not confined to his brother's children, but that his brother's heirs, whether children or not, shall take. Sorver v. Berndt is distinguished and explained in Gross's Estate.

In Long v. Labor, 8 Pa. 229, the word " heirs " is unequivocally used to describe substitutes, takers in the place of children, should any of then be dead at the date of distribution. The testator provided : " And the remainder if any . . . . to be divided among my children who may be living at the time of such distribution ; and in case any of them should be deceased. their heirs are to receive, in equal parts, such share as their parent would be entitled to receive, were they living." In this case, manifestly, the rule of Gross's Estate had no application because the testator had plainly ordered that the bequest should should not be limited to the children living at his death, but should be divided among the children then living, and the children of those who might then be dead.

In McGlathery's Estate, 7 Pa. C. C. 61, the court hold that " children " must be construed to mean issue, the testator having provided that the estate was to be divided between the children, " the same as though it came from their father." The language quoted was held by the court to demonstrate that the testator had in mind a more extensive scheme of distribution than to " children " strictly, that he intended to include all who would take under the intestate laws, children and other issue of the " father."

In Denlinger's Estate, 170 Pa. 107, the court hold that while the bequests were to classes, the issue of individuals of such classes dying before the testator might take, notwithstanding the rule of Gross's Estate, because there was express language

in the will distinctly showing that such was the intention of the testator.

As above stated the auditor can discover no language in the will under consideration showing that the testator meant to designate substitution takers for children who might be dead— that he intended to designate the grandchildren of Mary Penny-packer as takers.

Even if it should be conceded that by the use of the words "their heirs and assigns," the testator meant to indicate substitutes for such children as might be dead at his death, there would seem to be no justification for concluding that he intended substitution for any other than such children of Mary Pennypacker as were living at the time he made his will. He gave to the children of Mary Pennypacker, their heirs and assigns. When he used this language Mary S. Vanderslice, the mother of claimants, had been, for a considerable time, deceased. Was not the gift to those children of Mary Pennypacker who properly answered such description, who were living when the will was written; and was Mary S. Vanderslice—then not a child, but a dead woman—given anything? If she was not, then "their heirs and assigns" must refer exclusively to the heirs and assigns of the three children who were living at the date of the will.

In Long v. Labor, 8 Pa. 229, in passing on the language, "and the remainder, if any, . . . . is to be divided among my children who may be living at the time of such distribution, and in case any of them should be deceased, their heirs are to receive, in equal parts, such share as their parents would be entitled to receive, were they living," the court say: "As the words in the last clause are properly applicable to the children of those who should die in the interval, and not to the children of those already dead, a strict interpretation of them would exclude the latter."

. In this case the court found justification for departing from the natural construction of the language thus used, in the fact that the testator in an earlier part of his will had, in disposing of the bulk of his estate, included the children of children who were deceased at the date of the will, and had thus expressly manifested an intention to make them beneficiaries, and to dispose of his estate upon the principle of equality. The court

said : "Here, we are not merely left to conjecture that the testator did not mean to exclude the offspring of the dead, from the absurdity or the injustice of the thing ; but we can resort to his general principle of equal distribution which pervades every other part of the will. . . .

"Thus we see that the principle of his will is equality; and we are bound to give it effect so far as there is room for interpretation.

"In Gray v. Garman, no such principle was discoverable ; for nothing had been previously divided among the residuary legatees, by any measure of distribution whatever."

In the will before the auditor there is nothing outside the residuary bequest to indicate what the testator's purpose was with respect to the residue. The auditor is, to use language above quoted, "merely left to conjecture that the testator did not mean to exclude the offspring of the dead, from the absurdity or the injustice of the thing."

For the reasons given, the auditor is of opinion that the bequest under consideration requires the legacy to be distributed to John G. Moses, Margaret A. Chalfant and Eusebia N. Warden, exclusively. The claims of the grandchildren here, and of another set of grandchildren, under another clause, were most earnestly and ably presented, and the auditor has given his views at length because the exhaustive examination of the question made by counsel has inspired him with the desire that counsel shall know, that, if the auditor's views are erroneous, they are not the result of arbitrary or hasty judgment.

The auditor is of opinion that Jacob Moses intended that these claimants, his grandnephews and grandnieces should take. His relations with them appear to have been friendly, and no cause was discoverable for excluding them. This is mere conjecture, however, outside the will, and the auditor has not been able to find any language in the paper creating them beneficiaries.

By item ten of the will, one equal fourth part of the residue is given to the children of testator's brother, John Moses, share and share alike. At the date of the will John Moses' children were, and they are all living now, Martin Moses, John D. Moses, Hosea Moses, Annie Emery, Sarah Krauser, Rebecca Young and Ellen Hallman. These parties, seven in number,

will each be awarded one seventh part of one fourth of the residue.

By item eleven, one fourth part of the residue is given to the children of the testator's brother, Martin Moses, share and share alike. The children are: Samuel Moses, Reuben Moses, William Moses, Edward Moses, Abram Moses, Rachel Moses, and Annie Simmers. These children were all living at the date of the will, and are in being at this time. They will each be awarded one seventh part of one fourth of the residue.

I. Newton Wynn, Esq., called the auditor's attention to an attachment execution, Abraham Moses v. Samuel Moses, No. 41 October term, 1895. The attachment was issued upon a judgment for $300, with interest from April 1, 1895. The attachment was served upon the defendant, and upon the executors of Jacob Moses, deceased, as garnishees. This share of Samuel Moses will be retained by the executors until the attachment proceedings are concluded, or they are satisfactorily secured.

By the last item, testator bequeaths to the children of his sister, Mary Pennypacker, one fourth part of the residue, to be divided between them, their heirs and assigns, share and share alike, excepting her son, William J. Pennypacker, who is excluded from participation.

At the date of the will there were three children of Mary Pennypacker living: William J. Pennypacker, Albert P. Pennypacker and Mary Philips. These children are in being at this time. Mary Pennypacker had had a fourth child, Silas Pennypacker, but he was dead at the date of the will, leaving to survive him three children: Clifton E. Pennypacker, Ella Hause and Margaret James. In the opinion of the auditor, for the reasons given in connection with the claims of grandnephews and grandnieces, under the bequest to the children of Samuel Moses, these children of Silas Pennypacker are not entitled to participation in this legacy. William J. Pennypacker is excluded, and consequently this last fourth part of the residue will be equally divided between Albert P. Pennypacker and Mary Philips.

The following exception was filed, inter alia, to the auditor's report and dismissed by him:

Second. The auditor erred in disallowing the Silas Pennypacker heirs to participate in the distribution.

A similar exception was also filed by H. H. Gilkyson, Esq., attorney for the heirs of Mary S. Vanderslice.

The auditor's report was confirmed and exception dismissed by opinion of WADDELL, P. J., as follows:

We think the auditor has reached a proper conclusion upon the question submitted for his consideration.

His report is exhaustive and shows careful research and judicious consideration.

It may be the principles established by Gross's Appeal, 10 Pa. 360, and subsequent cases, result in hardships and will be modified or abandoned in time, but we prefer the court of last resort should indicate some such purpose before we depart from what appears to be the present rule of distribution under the circumstances of this estate.

*Error assigned* was in not sustaining the second exception filed to the report of the auditor.

*Wm. M. Hayes, H. H. Gilkyson,* with them *I. Newton Wynn* and *J. Carroll Hayes,* for appellant.

*Alfred P. Reid,* with him *J. Frank E. Hause,* for appellee.

OPINION BY ORLADY, J., December 7, 1896:

The report of the auditor, which was confirmed by the learned court below, covers practically all that may be said with advantage on the subject of controversy.

Gross's Appeal, 10 Pa. 360, rules the one under consideration and is a binding authority on this court. Nor does it stand alone: Guenther's Appeal, 4 W. N. C. 41; Ashburner's Estate, 159 Pa. 545; Bradley's Estate, 166 Pa. 300; Striewig's Estate, 169 Pa. 61, when before the court of last resort raised substantially the same question, and the rule of distribution has not been changed.

The decree of the court is affirmed.